NEW MEXICO-COLORADO COAL & MINING CO. v. BAKER et al.

### SYLLABUS BY THE COURT.

1. The secret or private instructions to an agent, however binding they may be as between the principal and his agent, can have no effect on a third person who deals with the agent in ignorance of the instructions, and in reliance on the apparent authority with which the principal has clothed him.                                    P. 535

2. One exercising the power to rescind his contract without right—that is, declaring to the other party his intention not to abide by it—commits thereby a breach whereon the other may bring an immediate suit, without demanding a performance, which, by the terms of the contract, was to be in the future.                                    P. 538

3. Where a party on a motion for new trial complains of an alleged erroneous decision of the trial court in the admission or exclusion of evidence, he must point out in his motion, specifically and with reasonable certainty, the particular evidence admitted or excluded; otherwise the court below need not, and the Supreme Court will not, review such alleged erroneous decision.                                    P. 540

4. Whenever the evidence adduced presents an issue of fact which, if determined in plaintiff's favor, would entitle him to recover, the case should be submitted to the determination of jury.                                    P. 541

5.  A record on appeal must show that it contains a transcript of all that portion of the record of the trial court necessary for consideration of the questions presented for review, and the duty of having such a transcript properly prepared and filed rests upon the appellant, or plaintiff in error.

P. 542

6.  It is well settled in this jurisdiction that a party who intends to assign error upon an instruction given by the trial court of its own motion, or upon request of the adverse party, must either tender to the court an instruction which correctly states the law, and except to the refusal to give such instruction, or he must, by his exception, call the attention of the trial court specifically to the error in the instruction proposed to be given, in order that the instruction may be corrected and the error avoided.

P. 543

## ON REHEARING.

7.  An objection, made in this court to the action of the trial court in instructing a jury after argument, cannot be entertained where the question was first raised in the motion for a new trial, and no request was made in the trial court that the jury be instructed before argument, and no objection or exception was made or taken to the action of the court in instructing the jury after argument.

P. 547

8.  The action of the court in giving to the jury instructions with the name of plaintiff's attorney signed thereto is not ground for reversal.    P. 544

9.  In an action for breach of a contract to sell coal to plaintiff, evidence held insufficient to sustain verdict as to amount for which it was rendered.    P. 545

Error to District Court, Colfax County; Leib, T. D., Judge.

New Mexico-Colorado Coal & M. Co. v. Baker, 21 N. M. 531.

Action by the New Mexico-Colorado Coal & Mining Company against J. R. Baker and another, partners as the Rock Milling & Elevator Company. Judgment for defendant, and plaintiff brings error. Affirmed upon filing remittur; otherwise reversed and remanded.

JESSE NORTHCUTT of Trinidad, Colorado, and MORROW & ALFORD of Raton, for plaintiff in error.

Plaintiffs failed to prove alleged agency.
Mechem on Agency, secs. 100, 276; 31 Cyc. 1322, 1333.

Shipment of coal was in no way an approval or ratification of alleged contract.
31 Cyc. 1253.

Refusal to order further cars authorized defendant to abandon or rescind contract.
Youghiogheny & O. Coal Company v. Verstine, Hibbard & Co.; 176 Fed. 972; Ohio Valley Buggy Co. v. Anderson Forging Co., 81 N. E. 574; Sage v. Purcell Co., 90 Ill. App. 160, affirmed 200 Ill. 342, 65 N. E. 723; Hull Coal & Coke Co. v. Empire C. & C. Co., 113 Fed. 256, 261-262; Cullen-Friestedt Co· v. Turley, 97 N. E. 946; Godchaux v. Chicago L. & C. Co., 59 So. 33; U. P. Brick Co. v. Fultonham, etc., 112 Fed. 920; Log Mountain Coal Co. v. White Oak Coal Co., 174 S. W. 721, 724·

F. DUMONT SMITH of Hutchinson, Kansas, and H. L. BICKLEY of Raton, for defendants in error.

(No brief filed because of court's order.)

### STATEMENT OF FACTS.

The complaint in this case alleged that on February 15, 1912, the defendant company, through its agent, entered into a written contract with the plaintiff, agreeing to sell and deliver upon demand of plaintiff, during the year 1912, 225 cars, or 9,000 tons, of coal; that the defendant subsequently approved and ratified the contract,

and made a shipment of one carload of coal upon order of the plaintiff, but subsequently, on August 5, 1912, repudiated said contract by a letter addressed to the plaintiff; that during the dates between which the contract was effective, the price of coal advanced in the Northern New Mexico field $1.50 per ton, and that plaintiffs were compelled to buy elsewhere and pay the amount mentioned per ton in excess of the contract price on the entire 9,000 tons of coal specified for delivery under the terms of the alleged contract between the parties, to the plaintiff's damage in the sum of $13,500; that plaintiffs were unable to get a coal of equal quality to that referred to in the contract, and were therefore compelled to furnish their customers with an inferior quality, resulting in a loss of business, and in plaintiff's damage in the sum of $5,000. The defendant company denied all the material allegations of the complaint except that it admitted its corporate existence, and, by way of counterclaim, set up a demand for $197.02 on account of coal sold and delivered to the plaintiffs between November 4, 1911, and April 1, 1912. The plaintiff, by way of answer to the counterclaim of the defendant company, admitted receiving two cars of coal prior to the making of the contract sued upon in this case, but alleged that the coal was not fit for domestic consumption on account of the fact that it contained a large quantity of slate and refuse, which condition was called to the attention of the defendant company, which agreed to adjust the same on an equitable basis at the time the contract was entered into which was the basis of this suit, which adjustment, however, had not been made. The plaintiff further admitted the receipt of another car of coal in March, 1912, which had not been paid for, but which plaintiff offered to credit the defendant with upon the indebtedness due from defendant to the plaintiff. Additional facts are stated in the opinion.

## OPINION OF THE COURT.

HANNA, J. (after stating the facts as above.)—This court has not had the advantage of a brief by the de-

fendant in error, and will therefore consider the alleged errors presented by the plaintiff in error in the order in which they are referred to in the brief.

[1] The first argued and submitted is based upon an alleged failure of the plaintiff to prove that the alleged agent of the defendant was duly authorized, or had any authority to make the alleged contract sued upon. It is contended that one dealing with an agent must ascertain whether he is an agent, and the extent of his authority; that the agent cannot establish his own authority either by his representations or by assuming to exercise it. There is no cause of quarrel with the general principle thus asserted by plaintiffs in error, which finds support in many authorities collected in 31 Cyc. 1322 et seq., but this general principle, like many others, is not without exceptions or qualifications, and the authority of the agent must not be confused with what may amount to a limitation of this authority by reason of secret instructions, which were not communicated to a third party, or the customer, as in this case. This qualification is thus announced in 31 Cyc. 1327:

"The secret or private instructions to an agent, however binding they may be as between the principal and his agent, can have no effect on a third party who deals with the agent in ignorance of the instructions, and in reliance on the apparent authority with which the principal has clothed him."

It is seriously urged by plaintiff in error that there is no evidence at all as to any inquiry by the plaintiff as to Farrand's agency and authority, or that defendant held out to the plaintiffs that Farrand was its agent; that the only evidence upon the subject is that Farrand appeared before the plaintiff, representing himself to be an agent, showing a card so designating him, and having in his possession certain blank forms of contract made out in the name of the defendant company. We have made a careful examination of the record in this respect, and find that the witness Farrand testified that he was employed by the defendant company as general sales agent in charge of the sale of their products; that he made a trip through

Kansas in 1912 in the interest of the defendant company, and there became acquainted with Mr. Baker, who was one of the partners in the plaintiff copartnership, and entered into a contract with such plaintiff which he identified as the one executed by himself and Mr. Baker. In further support of the alleged agency, the plaintiff offered in evidence a letter from the Yankee Fuel Company, addressed to the alleged agent, Farrand, offering him employment, which letter was signed by one Horace W. Kruse as general manager of the Yankee Fuel Company, and further offered a letter from the witness Farrand addressed to the same company, accepting the offer of employment. This witness, Mr. Farrand, also testified that at the time of the exchange of correspondence, Mr· Kruse was acting as general manager of the New Mexico-Colorado Coal & Mining Company, the defendant below. Mr. Kruse on the witness stand testified that the New Mexico-Colorado Coal & Mining Company became the selling agent for the Yankee Fuel Company on January 1, 1912, which was before the contract was executed, and that he was general manager of both companies. The offer of employment addressed to Mr. Farrand, and the acceptance, as disclosed by the correspondence referred to, were exchanged before the 1st day of January, and after the arrangement between the two companies. It would appear from the testimony of Farrand that he was paid his salary by the check of the defendant company, and his connection with that company is further referred to by his own testimony, to the effect that he had a certain conversation with the general manager, Mr. Kruse, who spoke to him about selling coal for the defendant company, the New Mexico-Colorado Coal & Mining Company, and that arrangements were made that he should represent himself as an agent of the defendant company. He identified a form of contract in the name of the defendant company, which was given him at the time, and one of which was the form of contract entered into with the plaintiff copartnership, which is the subject of the present litigation. Mr. Kruse as a witness testified that Mr. Farrand pre-

pared the form of contract in question. Another witness, Mr. Lawrence, an officer of the defendant company, testified that he knew that Farrand was going out to sell coal for the defendant company, and that the only question between this company and Mr. Farrand was whether he should sign the contracts at the time he made a sale, or whether he should bring them back to the office for execution by other officers of the company, this witness pointing out by his testimony that it was a requirement of the defendant company that all contracts must be approved by the executive officers of the company at New York. This witness expressly admitted that the alleged agent, Farrand, was sent out by the defendant company to sell coal and take orders for that company. Mr. Lawrence admitted, however, that the rule of the company as to the execution of contracts by the executive officers had not been communicated to the customers of the company, and therefore its limitation of the authority of the agent would have no bearing upon the case, and would in no wise affect the apparent authority of the agent, which clearly appears from the evidence as a whole. As stated in 31 Cyc. 1331:

"While as between the principal and the agent the scope of the latter's authority is that authority which is actually conferred upon him by his principal, which may be limited by secret instructions and restrictions, such instructions and restrictions do not affect third persons ignorant thereof, and as between the principal and third persons the mutual rights and liabilities are governed by the apparent scope of the agent's authority, which is that authority which the principal has held the agent out as possessing, or which he has permitted the agent to represent that he possessed, and which the principal is estopped to deny."

See, also, Western H. & L. Co. v. Bank, 9 N. M. 1, 47 Pac. 721.

There is another point presented in the consideration of this particular assignment of error, viz., that the shipment by the defendant to the plaintiffs of a car of coal in March, 1912, was in no way an approval and ratification of the alleged contract, for the reason that there is no evidence that at that time the defendant had any

knowledge whatever of the alleged contract. We cannot agree with this contention of the plaintiff in error because it would appear from the record that the witness Farrand testified that he brought back the contract after it had been executed by him and signed by one of the co-partners, and submitted it to the general manager of the defendant company. We therefore believe that it cannot be said that there is no evidence upon this point. The weight of this evidence was for the jury under the circumstances. We deem it unnecessary to further consider this particular assignment of error, and for the reasons stated do not consider that the same was well taken·

[2] The next assignment of error submitted by the brief of plaintiff in error is that, assuming the existence of the alleged contract, then there was no breach by the defendant. This assignment of error is argued from several standpoints, the first being upon the assumption that a contract existed under the terms and conditions of which a car of coal had been ordered and delivered, and then, owing to the failure of plaintiffs to pay for said car of coal by the 20th of the month following delivery, in accordance with the terms of said contract, the defendant would be relieved from carrying out the contract, and would be authorized to abandon or rescind the same. We do not deem it necessary to consider this question, which is raised in this court for the first time. It was not incorporated in either of the motions for a directed verdict, or for new trial.

The second contention under this assignment of error is that, under the terms of the alleged contract, delivery was at the option of the buyer, for which reason it was the duty of the plaintiff to make demand for delivery of the coal before the defendant could be said to be in default, and that the evidence discloses that the only coal ordered by plaintiffs under the contract was shipped in accordance with instructions, by reason of which fact the defendant was never in default. In other words, it is contended that where delivery is to be made at the buyer's option, the seller has no right to deliver, and the

buyer is not compelled to receive goods until his option is exercised, it being the duty of the buyer to notify the seller to make delivery, and that the buyer may demand delivery from time to time as he requires or needs the goods, or may order the whole to be delivered at any time during the period fixed, but he must at least order deliveries so that they may be complete at the expiration of the period.   Considerable authority is cited in support of these general principles, which we do not deem it necessary to consider further than to state that they have no application to the facts of this case.   It appears from the record that the defendants in writing advised the plaintiff that they would not be bound by the pretended contract which they understood had been made by Farrand as general agent of the defendant company.   We consider that the position of the defendant company in this respect amounted to a breach of the contract.   The body of the letter referred to reads as follows:

"We understand that you hold a 'contract' with this company made and entered into by George H. Farrand as general sales agent representing this company.   We wish to advise you that we do not know of any such contract, and that we do not recognize any contracts that were made by this man, who is not in our employ.   We are very sorry if this will discommode you in any way, but we could not fill your orders under the conditions and prices we understand this contract covers."

This was a definite refusal to fill further orders under the conditions and prices governed by the contract, and clearly obviated the necessity that plaintiff should make a new or further demand for delivery, and we believe that the principle announced by Mr. Bishop in his work on Contract (2d ed.) 610, is controlling under the circumstances of the case.   Mr. Bishop says:

"One exercising the power to rescind his contract without right—that is, declaring to the other party his intention not to abide by it—commits thereby a breach whereon the other may bring an immediate suit, without demanding a performance which, by the terms of the contract, was to be in the future."

Under the circumstances, therefore, we conclude that a demand was not necessary for delivery of the coal after the defendant had elected to rescind the contract by refusing to be bound by the terms and conditions thereof.

[3] It is next argued by plaintiff in error that prejudicial error was committed by the trial court in the admission of certain evidence over objection of the defendant. The evidence in question was Plaintiff's Exhibit B, a letter written in August, 1911, by the Yankee Fuel Company to George H. Farrand, offering him employment as an agent of said company, and Plaintiff's Exhibit C, a copy of a purported letter to the said Yankee Fuel Company from George H. Farrand, accepting the offer of employment referred to, and the alleged written contract sued on in this case, purporting to be signed by George H. Farrand as agent for the defendant company. As to these several exhibits offered and introduced in evidence, it is contended that each was irrelevant and immaterial to the issue in the cause. We cannot agree with the contention, and it seems clear to us that each exhibit tends to throw considerable light on the relation of the parties, and to explain the status of George H. Farrand in relation to the defendant company. It may be true that the exhibits, standing alone, did not prove agency, but, taken together with the testimony of the witness Farrand and others, they were material and relevant for the purpose of disclosing the relations of the several parties, and the manner in which said relation arose. We therefore conclude that as to the admission of these several exhibits, no error was committed.

A further ground of error is predicated upon the admission in evidence of plaintiff's Exhibits D and E, to which the same general objections of immateriality and irrelevancy were made, and which were a bill of the defendant company to the plaintiff company, for the car of coal delivered after the contract was entered into and the bill of lading in connection with the car of coal consigned to plaintiff by defendant in March, 1912. This particular ground of objection is disposed of by the fact

that it is raised in this court for the first time, and was not included in the motion for new trial. It was held in an early case by the territorial Supreme Court, and ever since has been the rule of that court, as well as the present court, that:

"Where a party, on a motion for new trial, complains of an alleged erroneous decision of the trial court, in the admission or exclusion of evidence, he must point out in his motion specifically and with reasonable certainty the particular evidence admitted or excluded; otherwise the court below need not, and the Supreme Court will not, review such alleged erroneous decision." Territory v. Anderson, 4 N. M. (Gild.) 213, 13 Pac. 21.

See, also, Wade's New Mexico Appellate Procedure, § 114, where later authorities are collected and referred to.

Plaintiff in error further argues in support of its contention that inadmissible evidence to the prejudice of the defendant was admitted over its objection, citing a number of alleged examples predicated upon questions and answers addressed to the witness George H. Farrand and the witness Baker. These objections, however, are all disposed of by what we have said as to the failure of defendant to incorporate the several objections in his motion for new trial. The motion for new trial is entirely silent upon these several grounds of objection, and the objections, therefore, are not available here for the reasons stated.

[4] The next assignment of error presented by the brief of plaintiff in error is directed to the denial of the defendant's motions for a directed verdict at the close of plaintiff's case and at the close of all the evidence. This assignment of error, it is argued, is well taken because the evidence fails to establish any knowledge or inquiry by the plaintiffs as to the existence of any agency, or the extent of the agent's authority, and fails to establish any holding out by the defendant at the time of the alleged contract, or at any time prior thereto, and fails to establish any acts or communications with knowledge of the facts which would amount to a ratification by the defendant, and fails to establish any demands by plaintiff

for delivery of coal under the alleged contract, and fails to establish any breach by the defendant of the alleged contract, and divers and sundry other grounds unnecessary for us to refer to. The facts as stated supra in this opinion will, however, we believe, disclose that there was a considerable conflict in the evidence upon these several issues, and it is well established that:

"Whenever the evidence adduced presents an issue of fact which, if determined in plaintiff's favor would entitle him to recover, the case should be submitted to the determination of jury." 38 Cyc. 1532.

This point was touched upon in a recent opinion by this court, in the case of Crawford v. Western Clay, etc., Co., reported in 20 N. M. 555, 151 Pac. 238, and while the foregoing principle taken from Cyc. was not there expressly followed, we there said that:

"When the evidence is of such a character that the proper inference to be drawn from it * * * is a question with respect to which different opinions may not unreasonably be formed, it must be submitted to the jury under proper instructions."

We therefore overrule this assignment of error.

[5] It is next urged that the trial court erred in refusing to give instructions requested by defendant, and numbered 1, 2, 3, and 4. These instructions, however, were substantially given by the court in other instructions, as is disclosed by a careful examination of the record, with the exception of a portion of the requested instruction numbered 3, to the effect that the plaintiff in its opening statement signified a willingness to allow the defendant, as a set-off, the value of the coal set forth in the cross-complaint of defendant. The record does not include the opening statement of counsel for plaintiff, and we cannot therefore pass upon this contention. As was said by this court in the case of Baca et al. v. Unknown Heirs, 20 N. M. 1, 5, 146 Pac. 945, 946:

"It is true that a record on appeal must show that it contains a transcript of all that portion of the record of the trial court necessary for a consideration of the questions

New Mexico-Colorado Coal & M. Co. v. Baker, 21 N. M. 531.

presented for review, and the duty of having such a transcript properly prepared and filed rests upon the appellant or plaintiff in error."

[6] Objection is also made by plaintiff in error to the giving of instructions numbered 1, 3, 5, 7, 8, and 9. As to each of the instructions complained of as given by the trial court, it is contended that the same, as given, erroneously stated the law upon the subject. These several objections, however, are not available because the record discloses that only a general objection was made to the giving of the instructions, and this objection failed to call the attention of the trial court specifically to the error complained of, or the vice existing in the instruction as given. In other words, no adequate opportunity was afforded the trial court to correct the alleged error, if the same existed, and as stated in the case of the State of New Mexico v. Jesus Gonzales, 19 N. M. 467, 144 Pac. 1144:

"It is well settled in this jurisdiction that a party who intends to assign error upon an instruction given by the [trial] court of its own motion, or upon request of the adverse party, must either tender to the court an instruction which correctly states the law, and except to the refusal to give such instruction, or he must, by his exception, * * * call the attention of the trial specifically to the error in the instruction proposed to be given, in order that the instruction may be corrected and the error avoided."

See, also, Childers v. Southern Pacific Co., 20 N. M. 366, 149 Pac. 307; Crawford v. Western Clay, etc., Co., 20 N. M. 555, 151 Pac. 238. As pointed out in Wade's New Mexico Appellate Procedure, at section 116:

"Where it is contended that the court erred in giving or refusing to give an instruction, the motion for new trial should clearly point out the instruction and the ground of error."

This was not done in the motion for new trial in this case, the ground of objection there urged to the giving of the several instructions being:

"The court erred in its instructions to the jury, in giving its instruction No. 1 to said jury."

For which reason the motion for new trial did not, in any manner, direct the court's attention to any vice in the instruction, or wherein error exists prejudicial to the appellant.

[8] It is next argued that prejudicial error arose in that the trial court gave to the jury instructions 5 and 8, with the name of plaintiff's attorney, F. Dumont Smith, signed thereto, because of the fact that the appearance of the name of such attorney tended to demonstrate to the jury an unwarranted confidence between the attorneys for the plaintiff and the court, and to signify that the instructions were drawn by such attorney, and so calculated to mislead and prejudice the jury against the defendant. This objection was first called to the attention of the trial court in the motion for new trial, and even though it be argued that the failure to earlier call the attention of the trial court to the matter is not now a sufficient answer to the objection, nevertheless we cannot see any merit in the argument that prejudicial error resulted. No similar case is called to our attention, and we do not believe that the facts presented are sufficient to justify a reversal of this cause on the ground of prejudicial error.

It is next argued that manifest prejudice to the defendant resulted from a failure of the trial court to instruct the jury previous to argument of counsel in this cause, for the reason that counsel had no opportunity to comment upon and explain the instructions, and the law applicable to the issues involved in relation to said instructions, and for the further reason that the statutes of the state of New Mexico require that instructions be given to the jury before the argument of counsel, which statutes are mandatory. There might be a serious reason for a favorable consideration of this objection if it appeared from the record that the instructions were given under the circumstances pointed out, but we have searched the record in vain for any evidence in support of the argument of counsel in this respect, and it is needless to say that we must be governed by the record in all respects, and cannot accept the argument of counsel as con-

clusive.   The record being silent as to when the instructions were given, and the alleged failure of the court to give the instruction as required by the statute not having been called to the attention of the trial court at the time, we are under the necessity of holding that this ground of objection is not well taken.   For the several reasons stated, the assignment of error in question upon the subject of instructions given and refused must necessarily be overruled.

[9]   The only remaining assignment of error for our consideration is that the verdict is contrary to the evidence and the law in this case.   This assignment is well taken in the opinion of plaintiff in error, because the plaintiff below failed to prove by a preponderance of the evidence, or by any evidence, the material allegations of the complaint.   This court has frequently passed upon the question, and has held that the verdict of the jury will not be disturbed if there is substantial evidence to support it.   A careful examination of the merits of the assignment, however, raises some doubt as to whether or not there is substantial evidence to support the verdict as rendered.   The verdict was for $13,500.   The complaint is based upon the alleged failure to deliver 9,000 tons of coal which the contract called for, at a loss of $1.50 per ton.   If this allegation of the complaint was supported by proofs, there would be substantial evidence to support the verdict in the sum of $13,500.   However, as we believe, the evidence upon the subject of damages, taken as a whole, lacks the definiteness which might free this question from difficulty.   One of the witnesses for plaintiff testified that plaintiff would have taken the quantity of coal provided for in the contract, viz., 9,000 tons, and that by reason of an advance in the price of coal after the breach of the contract by defendant, plaintiff was compelled to pay from $1 to $1.75 a ton more for the coal than the contract price.   In other words, this witness testified to a minimum loss of $1 per ton, and a maximum loss of $1.75.   There is therefore definite proof as to damages to the extent of $9,000, but we cannot say

that there is substantial evidence to support the verdict which is evidently based upon a damage of $1.50 per ton. Plaintiff might have had to pay $1.75 per ton for one or more tons; we cannot say, nor does the evidence disclose, how many. Plaintiff might have paid, as alleged in his complaint, $1.50 a ton on an average for the entire 9,000 tons which it was compelled to buy elsewhere after the cancellation of the contract. The evidence does not disclose that this was the case. We do think, however, that it discloses that plaintiff was damaged at least to the extent of $1 per ton, and no more. Other evidence to the same effect, and equally indefinite, is found in the record, but we do not think it necessary to refer to all of this evidence.

Our conclusion in the matter makes it necessary to compel a remittitur of the excess in the amount of this judgment over and above the amount which it is clear there is evidence to support, and we therefore order that if the defendant in error, within 30 days from the filing of this opinion, shall file with the clerk of this court its agreement to remit the sum of $4,500 from the judgment of $13,500 obtained by it in the court below, the remainder of the judgment will be allowed to stand; but, upon its failure so to do, the judgment will be reversed, and the cause remanded for new trial.

PARKER, J., concurs.

ROBERTS, C. J., did not participate in this opinion.

### ON REHEARING.

HANNA, J.—On motion for rehearing appellant has assigned five distinct grounds of alleged error in the opinion filed in this case. Only three of these questions shall be discussed here for the reason that the other two were disposed of in our former opinion and need no discussion again.

Appellant asserts that the question as to whether or not appellee breached its contract by refusing to pay for one installment of coal is properly before the court, for

the reason that it was properly presented to the trial court. A reinvestigation of the record discloses that no such question was raised in the trial court.

[7] Appellant also asserts that the record affirmatively discloses that the court gave its charge to the jury after arguments by counsel. The record does disclose this to be the fact, but it further shows that "at no time did counsel for either party request that the charge of the court be given to the jury before argument of the case," and that by their conduct gave the court to understand that there was no objection to such procedure. No objection was made by either of the parties to such procedure, and the question was first called to the attention of the trial court in the motion for a new trial. Appellant waived any error in respect to this question by failing to request the court at the proper time to charge the jury in the manner directed by statute, or excepting to the charge when made. The motion for a new trial, with but few exceptions, cannot perform the function of raising a new question, its function being to call to the attention of the trial court questions theretofore saved, so that the necessity of an appeal for the correction of error may be obviated by the granting of a new trial. No objection or exception having been made or taken as required, the question is raised here for the first time, and, not being jurisdictional, is not properly before the court.

We held in our opinion in this case that no demand for deliveries of coal, on appellee's part, was necessary because of the unequivocal and unqualified repudiation of the contract by appellant, citing as authority therefor the rule that where one party exercises the power of rescission without right, he commits thereby a breach of the contract, whereupon the other party may bring an immediate suit without demanding performance, although the time for performance may be in the future. Appellant concedes that the doctrine is correct, but contends that its qualification should be applied, viz.: that where the innocent party treats the repudiation as inoperative and awaits the time for full performance, he thereby, in

Enderstein v. A. T. & S. F. Ry. Co., 21 N. M. 548.

effect, waives the breach by way of repudiation and keeps the contract open and subsisting for all purposes. He thereupon concludes that the breach by appellant company was waived, and that appellee breached the contract by failure to demand deliveries of coal. Our opinion in this case on this question was written on the theory that the repudiation was accepted by appellee except for purposes of suit on the contract for damages, and we are satisfied that the facts of this case justify that conclusion.

Nothing else need be said in this regard except, perhaps. that under such circumstances the bringing of immediate suit by the innocent party is simply a fact evincing an acceptance of the repudiation; hence the bringing of an immediate suit is not a condition precedent to recovery. We regard the rule to be that only a release by appellee of appellant's liability on the contract, or the invocation of the statute of limitations, could defeat the appellee's cause of action, neither of which is involved in this cause.

The motion for rehearing is therefore denied; and it is so ordered.

PARKER, J., concurs.

ROBERTS, C. J., did not participate in this decision.

(REPORTER's NOTE· Remittitur was filed and judgment was affirmed.)