# UNITED STATES *v.* PURCELL ENVELOPE COMPANY.

## APPEAL FROM THE COURT OF CLAIMS.

No. 168. Argued March 10, 1919.—Decided March 31, 1919.

In answer to an advertisement under Rev. Stats., § 3709, claimant made the lowest bid for furnishing envelopes and wrappers to the Post Office Department, which was duly accepted. *Held,* that a contract was completed with the same force and effect as if a formal writing had been executed, and bond approved, by the Department, and that the Postmaster General or his successor had no discretion to revoke it. P. 317.

Charges embodied in requests for findings that such a contract was procured by one without financial standing, by imposing on the Postmaster General, *held* concluded by the judgment of the Court of Claims, sustaining the contract. P. 320.

Upon the Government's repudiation of such a contract before the time for performance has arrived, the measure of claimant's damages is the difference between the contract price and what would have been the cost of performance. *Id.*

This court will assume that evidence touching the amount of damages, including the expense necessary to make the contractor ready (as it was found to be) for performance of its contract, was duly considered by the Court of Claims. P. 321.

A contract to furnish and deliver promptly in quantities as ordered the envelopes and newspaper wrappers that the contractor may be called upon by the Post Office Department to furnish during four years, *construed* as entitling the contractor to supply all needed by the Department in that period. P. 322.

Motion to remand to the Court of Claims, for additional findings, denied. P. 323.

51 Ct. Clms. 211, affirmed.

THE case is stated in the opinion.

*Mr. Assistant Attorney General Frierson,* with whom

*Mr. Huston Thompson* and *Mr. J. Robt. Anderson* were on the briefs, for the United States:

The proposal by its terms contemplated only an agreement to enter into a contract. The contract itself, which was never executed on behalf of the Government, contained material matter not found in the proposal and acceptance, and was drawn to be executed by the Postmaster General, or, with his authority, by his Third Assistant, as required by law (19 Stat. 319, 355); and the bond required to be approved. Thus the case is clearly one of those where the agreement at most was upon the preliminaries to a contract which was never made. *Steamship Co. v. Swift*, 86 Maine, 248, 259, 261; *Ambler* v. *Whipple*, 20 Wall. 546, 556; *Commercial Telegram Co. v. Smith*, 47 Hun, 494, 501, 502. All contracts of a similar nature, since 1882, had been signed by the Postmaster General. In *Garfielde* v. *United States*, 93 U. S. 242, the acceptance made the contract because under the law relating to the class of contracts there involved (to carry the mail) all the conditions were statutory, and these having been complied with, the action of the Postmaster General was merely ministerial.

The contract was for the supply of such envelopes and wrappers as the Department might call for. Nowhere is there expressed any obligation of the United States to order in any particular quantity. The obligation is simply to pay for the articles accepted and delivered under the contract, at the rates specified, with the additional obligation to accept and pay for stock on hand at the expiration of the term, not exceeding the Department's average requirements for fifteen days. *Merriam* v. *United States*, 107 U. S. 437, 439, 444; *Lobenstein* v. *United States*, 91 U. S. 324, 325.

*Mr. Arthur Black*, with whom *Mr. Stanton C. Peelle* and *Mr. C. F. R. Ogilby* were on the briefs, for appellee.

MR. JUSTICE MCKENNA delivered the opinion of the court.

Action brought by appellee, the Purcell Envelope Company, which we shall designate as the Envelope Company, against the United States for damages for breach of an express contract. The Court of Claims rendered judgment for the Envelope Company for the sum of $185,331.76. The United States appeals.

The findings of the court are quite voluminous, but it is only necessary to quote from them to the following effect: The Post Office Department, through the Postmaster General, James A. Gary, invited by advertisement bids "for furnishing stamped envelopes and newspaper wrappers in such quantities as may be called for by the department during a period of four years, beginning on the first day of October, 1898." In pursuance of the invitation the Envelope Company submitted a bid in the manner and time specified in the advertisements of the Department.

The bid of the Envelope Company was accepted, and the following order entered: "  .  .  .  2nd. That the contract for furnishing the envelopes called for by the advertisement and specifications referred to be awarded to the Purcell Envelope Co., of Holyoke, Mass., as the lowest bidder for the Government standard of paper, at the following prices a thousand, namely:  .  .  ." The Department, before issuing the order, investigated the financial responsibility of the Envelope Company and considered it satisfactory.

April 21, 1898, the Department sent to the Envelope Company a "contract in quadruplicate," to be executed "at once" and returned to the Department. It was promptly returned as requested, signed by the president of the Envelope Company, with the Fidelity & Deposit Company of Maryland as surety in the sum of $200,000.

April 27, 1898, the Department, by the Third Assistant Postmaster General, wrote to the Envelope Company as follows: "Your telegram of to-day is before me. As the Postmaster General has not yet signed the contract awarded by the Department to your company for furnishing stamped envelopes during the coming four years, but is holding the matter in abeyance, I have to request that you suspend all action under my letter of the 21st instant until further orders." The Envelope Company had, however, already made arrangements and contracts for the supplying to it of the necessary materials to fulfill the terms of the contract and was ready and willing at all times to fully perform it according to its terms. But neither the Postmaster General, nor any department or officer of the Government made any call or request upon the Envelope Company to furnish or deliver the envelopes or wrappers which were the subject-matter of the contract and the company's plant was kept intact ready for the performance of the contract, remaining idle.

July 22, 1898, the Department, through Postmaster General Smith, the immediate successor of Postmaster General Gary, the latter having gone out of office, revoked and canceled the contract and declared it to be null and void. Prior to doing so the Postmaster General instituted an investigation through one of his proper officers into the business and financial standing of the Envelope Company and the report thereunder was unfavorable to the company.

On or about July 22, 1898, the Envelope Company, having received information that the Postmaster General designed readvertising for proposals, sought by a bill filed in the Supreme Court of the District of Columbia to enjoin his action. The bill was dismissed August 15, 1898. The court, however, was of opinion that a contract had been executed but that the Envelope Company had an efficient rer~° ͺ. . law.

An offer was subsequently made by two other companies to supply the Post Office Department, upon an emergency contract, stamped envelopes and wrappers of the kinds and qualities the Government should need. The Department declared that an emergency existed under § 3709, Rev. Stats., accepted the offer and entered into a contract in accordance therewith.

The total cost to the Envelope Company for materials and the manufacture and delivery of the envelopes and wrappers in accordance with the terms of its contract would have been $2,275,224.46. Deducting that sum from the contract price leaves a difference of $185,331.76, which represents the profit the company would have made if it had been allowed to perform its contract. For that sum judgment was entered.

It will be observed from the recitation of the above facts that the case presents the propositions—First, was there a completed contract between the Envelope Company and the United States through its Postmaster General, and, second, if there was such contract. what is the measure of damages?

For an affirmative answer to the first proposition the Envelope Company relies on *Garfielde* v. *United States,* 93 U. S. 242, and on that case the Court of Claims rested its decision and considered that the case was supported by other cases which were cited.

The case may be considered as the anticipation of this— its prototype. It passed upon a transaction of the Post Office Department and decided that a proposal in accordance with an advertisement by that department and the acceptance by it of the proposal "created a contract of the same force and effect as if a formal contract had been written out and signed by the parties." And for this, it was said, many authorities were cited but it was considered so sound as to make unnecessary review of or comment upon them.

In resistance to the case as conclusive the Government urges the qualification that "the court did not say, or assume to say, that the acceptance of the proposal in *all* [italics counsel's] cases constituted a contract, but held that it did in the present [that] case," and that "there was a reason for the conclusion . . . which does not obtain in the case at bar." We cannot agree, and in answer to the first qualification it is only necessary to say that the court expressed a principle, not, of course, applicable to all cases, but applicable to like cases; and the present is a like case, identical in all that makes the principle applicable. And in so determining we answer the other objection of the Government that there were features in the law in the *Garfielde Case* which do not obtain in the pending case, which constituted, if we understand counsel, the determination of the law against the act of the Postmaster General, his duty being merely ministerial. In the present case it is insisted his action is not so subordinate, that he has discretion, and when exercised it is paramount, his action being "quasi judicial," the contract not having been consummated, and that, therefore, it was within his power to review and set aside the decision of his predecessor. We are unable to concede the fact or the power asserted to be dependent upon it. There must be a point of time at which discretion is exhausted. The procedure for the advertising for bids for supplies or services to the Government would else be a mockery—a procedure, we may say, that is not permissive but required (§ 3709, Rev. Stats.). By it the Government is given the benefit of the competition of the market and each bidder is given the chance for a bargain. It is a provision, therefore, in the interest of both Government and bidder, necessarily giving rights to both and placing obligations on both. And it is not out of place to say that the Government should be animated by a justice as anxious to consider the rights of the bidder as to insist upon its own.

And, we repeat, there must be some point at which discretion ceases and obligation takes its place. That point is defined in the *Garfielde Case*, and that the definition is applicable to the case at bar is illustrated by the findings of the Court of Claims. Upon the invitation, in accordance with law, of Postmaster General Gary, the Envelope Company and eleven others submitted bids. The Envelope Company was the lowest bidder and after the Company had been found upon investigation to be financially responsible its bid was accepted by entry of a formal order. The Company was then directed by the Department to execute the necessary contract in quadruplicate, which it did, and returned the contract to the Department with a surety whose responsibility was not questioned at any time nor was other security demanded, as it might have been. Postmaster General Gary went out of office, and his successor, either by inducement or upon his own resolution, revoked the contract and entered into a contract with other companies.

The record furnishes no justification of such action. There is no charge of default against the Envelope Company, no charge of inability to perform its contract, except in a particular which we shall hereafter mention. There is, it is true, a finding that Postmaster General Smith caused an investigation to be made of the financial standing of the Envelope Company and that the report thereunder was unfavorable to it. This is made a great deal of, and the fact that the contract was not signed nor the bond of the Envelope Company approved.

It makes no difference that the contract was not formally signed or the bond formally approved, as counsel for the Government contends they should have been, both by the terms of the contract and by a statute of the United States (28 Stat. 279). Their formal execution, as we have seen, was not essential to the consummation of the contract. That was accomplished, as was decided in the

*Garfielde Case,* by the acceptance of the bid of the Envelope Company and the entry of the order awarding the contract. to it. Therefore, we do not follow with minute attention the argument of the Government in asserting the power of Postmaster General Smith to review and annul his predecessor's decision and that directed against the financial standing of the Envelope Company or the deception the Government asserts was practiced on Postmaster General Gary, which are made the subject of a request for findings. We may assume that the Court of Claims considered such charges and all other elements before concluding that the Envelope Company was entitled to recover. And we pass to the question of damages.

The Court of Claims decided that the measure of damages was the difference between the cost to the Envelope Company of materials and the manufacture and delivery of the envelopes and wrappers in accordance with the terms of its contract and what it would have made if it had been allowed to perform the contract. For this the court cited and relied upon *Roehm* v. *Horst,* 178 U. S. 1. It is there decided that the positive refusal to perform a contract is a breach of it, though the time for performance has not arrived, and that liability for the breach at once occurs. And it is further decided that the measure of damages is the difference between the contract price and the cost of performance. The case was replete in its review of prior cases. We may refer, however, to *United States* v. *Speed,* 8 Wall. 77, 85; *United States* v. *Behan,* 110 U. S. 338; *Hinckley* v. *Pittsburgh Steel Co.,* 121 U. S. 264.

The Government does not attack the ruling but contends that it was not properly applied by the Court of Claims. The contention is rested on the following finding: "Claimant, contemplating making the envelopes under its said contract on the Wickham envelope machines, entered into negotiations with Horace J. Wickham whereby he prom-

ised to furnish claimant with a sufficient number of said machines on which to perform said (envelope) contract, and to have some of them ready before the beginning of the contract term, October 1, 1898."

The Government says of the Wickham machine that it made the envelope in one operation and that there is nothing to show that the Court of Claims, "as an incident to the cost of performance of the contract, considered the cost of the Wickham machines to appellee, although evidence of the same was submitted to it." And further, "if the court did find this item, and did consider it in arriving at the judgment, appellant is entitled to know this." Again, the Government contends that "so far as the findings are concerned it does not appear that the court allowed a reasonable deduction from the amount of the judgment by reason of appellee's release from care, trouble, risk, and responsibility attending the performance of the contract."

To the contentions there may be offset the decision of the Court of Claims. The court in its opinion expressly declares that the findings showed that the Envelope Company had fulfilled all the requirements of the Postmaster General and was ready and willing to furnish the envelopes and wrappers and recognized, we may assume, as grounds to be considered the elements the Government urges, so far as the court deemed them relevant or as having any probative strength, and its appreciation of them was obtained after protracted litigation involving two complete trials. We are not, therefore, disposed, on assertions so elusive or disputable of estimation as those of the Government, to reverse or modify the judgment.

There are other contentions of the Government which we may pass without comment except one which it submits upon a supplemental brief. It is addressed to the rule of damages adopted by the Court of Claims and urges that it was erroneous, based on the theory, as it is as-

serted, that the Envelope Company "had a contract which entitled it to furnish all the stamped envelopes and wrappers, of the sizes mentioned in the specification, which the Post Office Department *should need* [italics counsel's] during the four years' contract." This is denied, and it is said, quoting the contract, that the Envelope Company was only to "furnish and deliver promptly and in quantities as ordered," the envelopes and wrappers "that it may be called upon by the Post Office Department to furnish during the four years." It is difficult to treat the contention seriously. There is something surprising in the declaration that a contract to supply a great department of the Government with envelopes and newspaper wrappers which it might need for a period of four years at a cost of nearly two and one-half million dollars bore but scant obligation upon the part of the Government, or, to be precise and in the language of counsel, that the Envelope Company "could not have forced the giving of orders [by the Government] in excess of fifteen days' supply," and that this was the extent of the Government's obligation. And the further contention is, that the obligation being thus limited the damages the Envelope Company was entitled to were, at most, "the expenses, incurred in getting ready to perform the contract, and the profits it would have derived from the manufacture and sale" of such fifteen days' supply—that all else was expectation and cannot be capitalized by the Envelope Company and made the basis of profits and the responsibility of the Government. If the contention be more than dialectical we may express wonder that it was not given prominence in the Court of Claims and that in this court it was reserved for the afterthought of a supplemental brief. The further answer may be made that the contract of the Envelope Company was not so dependent as urged, and that its expectation was substantial is evidenced by the haste of the Department, after the revocation of the contract

with the Company, to declare an emergency in its need and enter into a contract with other companies.

On January 13th the Government made a motion to remand the case to the Court of Claims for additional findings. It was denied, but the right reserved to make such order if we should be so advised. Our attention is directed to the motion, which it is submitted should be considered on the merits. Again considering the motion and the case as it has been developed by argument of counsel, we think the motion should not be granted. The judgment of the Court of Claims is

*Affirmed.*

Mr. Justice McReynolds took no part in the consideration and decision of this case.