## Consolidated Utilities of Kentucky, Inc., et al. v. Town of Bloomfield.

(Decided March 23, 1934.)

JOHN E. RICHARDSON, J. SMITH BARLOW, Sr., and CARROLL M. REDFORD for appellants.

ERNEST N. FULTON for appellee.

OPINION OF THE COURT BY JUDGE DIETZMAN—Reversing.

On November 10, 1930, the appellee passed an ordinance creating a franchise for the sale and distribution of gas for light, heat, power, and other purposes within its corporate limits. By section 9 of the ordinance, the purchaser agreed to have installed within twenty months from the date the franchise should take effect the gas system provided for by the ordinance. Section 12 of the ordinance reads:

"The franchise created by this ordinance shall become null and void thirty days from the date this

ordinance shall take effect unless the purchaser, within said thirty day period, makes bond in the sum of $2,500.00 to the Town of Bloomfield, guaranteeing its performance under Section 9 hereof."

Section 13 of the ordinance, after providing when and how the franchise should be offered for sale and the manner in which the board of trustees of the appellee should accept or reject the bids, reads:

"The payment of the purchase price by the purchaser to whom this franchise shall be awarded and the execution and delivery by him of the bond provided in Section 12 of this ordinance and the acceptance of same by the Board of Trustees shall vest the purchaser with all the rights and powers herein granted."

On the 26th day of November, 1930, this franchise was put up for sale and the appellant Consolidated Utilities of Kentucky, hereinafter called the utilities company, bid it in for the sum of $61. Later that day the board of trustees of the town of Bloomfield met, as the ordinance directed they should do, and, after the chairman had reported the sale to them, the following resolution was adopted:

"It was moved by Trustee J. W. Hays, seconded by Trustee Harry Plock, that the bid of $61.00 as reported by the Chairman of the Board of Trustees, be accepted, and that the sale as made to it [the Utilities Company] by the Board of Trustees be approved, and that said sale be ratified, confirmed and approved, and that said franchise, rights and privileges thereunder, as set out and fixed by said ordinance be granted to the said Consolidated Utilities of Ky. its successors and assigns, subject to the execution and delivery by it of the bond provided for in Section 12 of said franchise ordinance and the acceptance and approval thereof by the Board of Trustees."

A copy of the franchise was given to a representative of the utilities company who took it with him to Chicago. There a bond was prepared and signed by the surety, the appellant Fidelity & Deposit Company of Maryland, and mailed on December 17, 1930, to the clerk of the appellee's board of trustees. It was received by a minor employee of that clerk. This minor employee

noticing that the bond had not been signed by the utilities company returned it to that company for execution. On its receipt, the utilities company signed it and returned it on December 20, 1930. It was again received by this minor employee, who, after inspecting it, put it away. Not only are the records of the town silent concerning any presentation of this bond to the board of trustees for approval or rejection, but the evidence affirmatively shows that the bond was never presented to this board, was never examined or read by it, though perhaps the chairman of the board saw it in the custody of the minor employee and read it casually and that no action was ever taken upon it by the board. After the bond had been received as before stated, the records of the meetings of the board disclose no further action concerning the bond or the franchise. The condition of the bond as executed reads thus:

"Now, therefore, the condition of this obligation is such, that if the purchaser shall indemnify the owner against any and all loss or damage directly arising by reason of the failure of the purchaser to faithfully comply with Section 9 of Gas Franchise Ordinance, then this obligation shall be void, otherwise to remain in full force and effect."

Financial conditions becoming very much depressed beginning with the year 1931, the utilities company was never able to finance any construction and nothing whatever was done by it under the franchise above mentioned. After the expiration of twenty months, this suit was brought by the town against the utilities company and its surety on the bond. In its petition, the appellee sought a reformation of the condition of the bond on the ground that as written it did not conform to the real and true agreement of the parties in that as written it was an indemnifying bond, whereas the franchise called for a bond guaranteeing the faithful and prompt performance of the covenant to construct the plant within twenty months. It was alleged that the failure of the bond to comply with the real agreement of the parties was due either to the mutual mistake of the parties or fraud on the part of the utilities company and its surety and mistake on the part of the town. The petition asked that the condition of the bond be reformed to read thus:

"Now, therefore, the condition of this obliga-

tion is that we guarantee the owner the performance of the said written franchise by the purchaser, under and according to the terms of said section 9 of said written ordinance."

Many defenses were interposed by the utilities company and its surety, among which was the one that the franchise by its terms became null and void unless the bond called for by section 12 was executed within 30 days and that both section 13 of the franchise and the resolution of the board accepting pursuant to that section the bid of the utilities company, provided that the franchise should not vest in the utilities company until the bond referred to in section 12 of the ordinance had been executed and accepted by the board and that the bond had never been accepted by the board. On final hearing, the court reformed the contract in accordance with the prayer of the petition and gave the appellee judgment against the utilities company and its surety in the sum of $2,500, that being the penal sum of the bond. From that judgment, this appeal is prosecuted.

We are of opinion that the defense offered by the utilities company and its surety above mentioned must prevail. The ordinance creating the franchise expressly provided that the franchise should not vest in the purchaser until he had executed and the board had accepted the bond called for by section 12 of the ordinance. The resolution of the board accepting the bid of the purchaser likewise so provided. The board has never accepted said bond. Hence under the express terms of the franchise and the resolution accepting the bid, nothing has vested in the utilities company. It had no right to enter upon the streets of the city and to install pipes, etc., therein unless and until it had acquired the franchise right so to do. Nor until the bond was accepted by the board did it become at least as between the appellants and the appellee a binding obligation on the part of the appellants. This case is like in principle to that of Dorain v. Walters, 132 Ky. 54, 116 S. W. 313. In that case, the law provided that one elected to the office of city treasurer should execute bond in the sum of $20,000, which bond had to be approved by the city council. In that case, the bond had never been approved and it was held that in such state of case the appellee, who had been elected to the office of city treasurer, had no right to that office until the bond called for by the ordinance had been approved by

the council. Cf., Boyd County v. Ross, 95 Ky. 167, 25 S. W. 8, 15 Ky. Law Rep. 520, 44 Am. St. Rep. 210. The case of Growbarger v. United States Fidelity & Guaranty Co., 126 Ky. 119, 102 S. W. 873, 31 Ky. Law Rep. 555, 11 L. R. A. (N. S.) 758, 128 Am. St. Rep. 274, does not militate against these views. In that case, the suit was on a bond given by a town marshal for the faithful performance of his duties as such. In making an arrest, he killed the man he was arresting. In a suit against him and his bondsman for this killing, it was held that the killing had been unnecessary to effect the arrest and that the marshal and his bondsman were liable for that killing. The point was made that the petition disclosed that the bond had never been accepted or approved by the proper authorities. The court held that whilst the petition did disclose that the records of the town failed to disclose the acceptance and approval of the bond, yet it did sufficiently aver the execution of the bond and its acceptance by the proper authorities though no record had been made of such acceptance and hence the petition was good on demurrer. In the instant case, the proof, as stated, not only shows no town record of any acceptance or approval of the bond here in question but affirmatively establishes that no such acceptance or approval ever was had. Further, the Growbarger Case was one where the marshal had entered upon the discharge of his duties under and by virtue of the purported bond and while so acting had damaged a third party. Obviously, in such state of case as that where the rights of third parties have intervened, the marshal and his surety would be estopped to deny that the bond had not been properly accepted. In the Dorain Case, and in the instant case, the contest is between the original parties. No facts are pleaded or proved tending to establish an estoppel even as between them and hence none is presented, as was the fact in the case of Fidelity & Deposit Co. of Maryland v. Commonwealth, etc., 252 Ky. 476, 67 S. W. (2d) 719, 721. There the tax collector had been delivered the tax books and had entered upon the discharge of his duties and collected the taxes, and it was held that he and his surety were "estopped from disputing the regularity or validity of [his official] bond or its due approval or acceptance." But in the instant case nothing was done. The appellant utilities company never entered upon the streets or undertook to exercise any right under the franchise. Neither it nor its surety did anything to

estop either one of them from questioning the approval or acceptance of the bond, conditions precedent, as we have seen, to the vesting of this franchise in the utilities company. In the case of United States v. Purcell Envelope Co., 249 U. S. 319, 39 S. Ct. 300, 63 L. Ed. 620, relied upon by the appellee, the contract involved had been absolutely awarded. It was not conditioned on the execution of a bond. Here the vesting of the franchise was by its terms and the resolution of the board accepting the bid conditioned on the execution of the bond and its approval. As the bond had never been approved by the board, the franchise has never vested in the appellee. The franchise never having vested, the appellee was not obligated to complete the installation of its pipes, etc., within the twenty-month period. The court should have dismissed the petition of the appellee.

Judgment reversed with instructions to dismiss the petition of the appellee.

Whole court sitting with the exception of Judge Richardson who took no part in the decision of this case.