802 P.2d 634

**K.L. CONWELL CORPORATION,**
**Plaintiff–Appellant,**

v.

**CITY OF ALBUQUERQUE,**
**Defendant–Appellee.**

No. 18984.

Supreme Court of New Mexico.

Nov. 26, 1990.

---

Lester C. Cannain, Albuquerque, for appellant.

Mark Hirsch, Asst. City Atty., Albuquerque, for appellee.

## OPINION

SOSA, Chief Justice.

On January 11, 1990, the trial court granted the City of Albuquerque's (City) motion for summary judgment and denied K.L. Conwell Corporation's (Conwell) equivalent motion. Conwell appeals, seeking reversal of the denial of its motion insofar as liability for breach of contract is concerned and a trial insofar as damages are concerned.

## I. FACTS

The undisputed facts leading to the trial court's ruling and pertinent to this appeal are as follows:

On October 5, 1988, the City issued an advertisement for bids for the construction of the Loma Linda Community Center. By the terms of the bid proposal, sealed bids were to be opened on November 1. Bids were deemed irrevocable for 45 days after the bid opening date. The City was to make an award on the bids within 30 days from the bid opening date, unless the City

and an offeror agreed to extend the City's time for acceptance of a bid beyond the 30–day period. The bid proposal also specified that the offeror had to deliver within 10 days of notification of acceptance by the City of the offeror's bid, certain documents to the City's architect. One of these documents pertained to certificates of insurance. The architect was designated by the City to draft the bid proposal specifications and to interpret the requirements of bid documents.

The bid proposal specified that the Subcontractors Fair Practices Act, NMSA 1978, Sections 13–4–31 to –43 (Repl.Pamp. 1988 and Cum.Supp.1990) (the Act), was to be incorporated into the construction contract as Section 8, paragraphs A–H. Paragraph G of Section 8 reads, in pertinent part, as follows:

> In the event a hearing is required pursuant to the provisions of the Subcontractors Fair Practices Act and a delay in the work is caused as a result of a subcontractor protesting its substitution, the CONTRACTOR shall not be entitled to an increase in the Contract Sum or Contract Time.

Conwell submitted a sealed bid on November 1. The City and Conwell then agreed to extend to December 8 the time for the City to make an award to Conwell. On December 8, Conwell received an award letter from the City, which provided in pertinent part as follows:

> You are hereby notified that the contract for construction of the above referenced project has been awarded to your company * * *. As provided in the Bid Proposal, you are required to execute and deliver each of [certain specified forms] * * * together with the same number of copies of the Certificates of Insurance and all other information and forms that are required by the Contract Documents to [the City's architect], within ten (10) calendar days of receipt of this Notice of Award.
>
> \*      \*      \*      \*      \*      \*
>
> After the Agreement has been signed and the * * * Certificates of Insurance have been accepted by the City, an exe-

cuted counterpart of the Contract Documents will be transmitted to you by the consultant. The consultant will prepare, have executed by the city, and deliver to you a Notice to Proceed on the project at the pre-construction conference.

An addendum to the letter award provided, in pertinent part:

> One actual original Policy and 6 copies of "Owner' [sic] and Contractors' Protective Liability" insurance policy must be included. Coverage must be in an amount not less than $500,000 and must include the City and the Engineering Firm as "Named Insured". (Architectural Firms do not need to be included as "Named Insured").

On December 16, eight calendar days after receipt of the letter award, Conwell delivered to the City's architect the necessary forms along with the certificates of insurance. The architect noted that he had not been named as an insured and asked Conwell to correct the certificate of insurance to include the architect. Conwell did so, returning the certificate to the architect on December 19. Saturday and Sunday fell on December 17 and 18, respectively. By the terms of the bid proposal the 45–day period for bid irrevocability expired on December 16. The City notified Conwell to attend the pre-construction conference scheduled for December 22, and Conwell complied.

Between December 16 and 22, Conwell on three occasions submitted three separate requests to substitute subcontractors on the project. According to the provisions of the Act, subcontractors to be substituted are entitled to notice and hearing, NMSA 1978, Sections 13–4–36, to –43, in order to protest the substitution. According to paragraph 8–G of the contract, quoted above, should such hearings cause a delay, Conwell could not obtain additional time for performance or additional monies for performance of the contract.

On December 27, the City asked Conwell to agree to extend the time for bid irrevocability to January 30, 1989. On January 3, 1989, Conwell responded to the City's request by asking the City to waive para-

graph 8–G of the contract. On January 23, 1989, Conwell received a letter from the City withdrawing its notice of award. The letter stated, in pertinent part:

> In essence, the City cannot accept a counter-proposal to the stated terms and conditions of the original contract * * *. The City does not agree to waive [paragraph 8–G] and is therefore unwilling to enter into contract with your firm. In addition you failed to timely submit the correct and complete contract documents with your signature.
>
> \*  \*  \*  \*  \*  \*
>
> Therefore, the City hereby withdraws the previously issued Notice of Award for this contract to K.L. Conwell Corporation.

## II. ARGUMENTS ON APPEAL

Conwell's contentions on appeal are as follows: A legally binding contract was formed on December 8, with Conwell's receipt of the award letter. Delivery of the various forms and the certificate of insurance to the architect within ten days of December 8 was, in Conwell's language, a "condition subsequent." Conwell delivered these documents to the City's architect on December 16. Thus the so-called condition subsequent was satisfied.

The fact that Conwell had to correct the certificate of insurance was the City's fault in stating in the award notice that the architect did not have to be named. Thus Conwell's delivery of the corrected certificate on December 19 was not a failure of the "condition subsequent." Further, December 18 fell on a Sunday, and Conwell thus had until Monday, December 19, to deliver all documents to the architect, regardless of its correction of the certificate.

Conwell further alleges that its three requests to substitute subcontractors after award of the contract do not constitute a repudiation of the contract. The Act, Conwell points out, explicitly provides for substitution of subcontractors. Nor, Conwell contends, was its request to the City to waive paragraph 8–G of the contract a repudiation of the contract. According to

Conwell, it was simply trying to bargain with the City after the City had asked for an extension of time.

Conwell contends that the City erroneously assumed that it was barred by the Act from waiving paragraph 8–G. Conwell points out that there is no requirement similar to paragraph 8–G in the Act and that the City had the prerogative to waive the paragraph. The City, Conwell argues, erroneously construed Conwell's attempt to bargain with the City over the waiver of paragraph 8–G as Conwell's attempt to change the terms of its bid acceptance.

The City, on the other hand, contends that no contract was ever formed. It argues that the December 8 award letter was a conditional acceptance of Conwell's bid. The City states that Conwell's delivery on December 19 of the last of the required bid documents was three days late, because the forty-five day bid-irrevocability period expired on December 16. The City construes the bid proposal's requirement to deliver all forms and documents to the City by December 16 as a condition precedent to the formation of the contract.

Conwell's demand that the City waive paragraph 8–G, the City argues, was a material and substantive change in the terms and conditions of the notice of award. The City argues that to allow Conwell to change the terms of the bid award in effect would be to bestow a competitive advantage upon Conwell, something inconsistent with applicable law. The City construes Conwell's supposed "attempt to bargain" as a "demand" that the City change the terms of the contract or be faced with Conwell's repudiation of the contract.

Finally, the City contends that it validly exercised its discretion to withdraw its notice of award. Because no contract was formed, the City concludes, Conwell's motion for summary judgment on liability was properly denied, and Conwell's attempt to recover damages is misplaced. Conwell's remedy, if any, is to seek award of the contract from the court.

## III. DISCUSSION OF LEGAL ISSUES

■ We note at the outset the rule that the requirements of competitive bidding are strictly construed against the governmental authority proposing the bid. *Cosentino v. City of Omaha*, 186 Neb. 407, 183 N.W.2d 475 (1971). We note also that interpretation of public works contracts involving a municipality is controlled by the same rules that govern contracts involving private citizens. *Hensler v. City of Los Angeles*, 124 Cal.App.2d 71, 268 P.2d 12 (1954); *Henry Shenk Co. v. Erie County*, 319 Pa. 100, 178 A. 662 (1935); *See City of Orlando v. Murphy*, 84 F.2d 531 (5th Cir.), *cert. denied*, 299 U.S. 580, 57 S.Ct. 45, 81 L.Ed. 427 (1936).

■ Ordinarily a municipality's acceptance of a valid bid constitutes a binding contract. 10 E. McQuillin, *The Law of Municipal Corporations* § 29.80 (3d ed. 1990) (hereinafter McQuillin). This may be so even though there may have been defective compliance with certain legal formalities. *Id.; see United States v. Purcell Envelope Co.*, 249 U.S. 313, 39 S.Ct. 300, 63 L.Ed. 620 (1919) (binding contract formed even though contract document not executed or bond formally approved). However, where a governmental authority accepts a bid for *public improvements*, mere acceptance by the authority is not conclusive of the contract's validity. 10 McQuillin § 29.80.

"[W]here certain things are required by law to be done by the board having authority to let the contract as conditions precedent, the law must be fully complied with before the contract can be considered as made." *Id.* § 29.71. But, generally, when a bid has been accepted, its acceptance cannot be revoked. *Id.*

■ Applying these principles to the case before us, a key question becomes whether Conwell's obligation to deliver certain documents and certificates to the City's architect within ten days of the notice of award amounted to a condition precedent or condition subsequent.

Generally, a condition precedent is an event occurring subsequently to the formation of a valid contract, an event that must occur before there is a right to an immediate performance, before there is a breach of a contractual duty, and before the usual judicial remedies are available. Whether conditions precedent are considered prerequisites to formation of a contract or prerequisites to an obligation to perform under an existing agreement is controlled by the intent of the parties. *Western Commerce Bank v. Gillespie*, 108 N.M. 535, 537, 775 P.2d 737, 739 (1989) (interpreting condition precedent as applying to conditional *performance* and not conditional *formation;* inability of heirs to obtain timely financing did not prevent formation of binding contract).

A condition subsequent, on the other hand, is:

any event the existence of which, by agreement of the parties, operates to discharge a duty of performance that has arisen. The key to understanding a condition subsequent is the notion that a duty to perform a promised performance has already arisen and is discharged because it was agreed that it would be discharged if a certain event occurs. That event is called a condition subsequent.

For example, assume that an insurance company promises to make payments if a fire occurs and if the insured files proof of loss with the insurer within sixty days after the loss. It is clear that the occurrence of the fire and the filing of the proof of loss are conditions precedent to the insurance company's promise to pay * * * [I]f these conditions are met it is clear that the company is obliged to keep its promise to pay at this point in time and that a failure to pay amounts to a breach.

However if there is a provision to the effect that the insurance company's obligation to pay is discharged if the insured fails to sue within one year of the filing of proofs of loss, we are dealing with a condition subsequent because the failure to sue within the time specified discharges a duty that has already arisen.

In the law of contracts conditions precedent are quite common while true conditions subsequent are very rare.

J. Calamari and J. Perillo, *The Law of Contracts* § 11–7, at 441–42 (3d ed. 1987).

Taking these authorities into account, it is obvious that Conwell's attempt to construe, as a condition subsequent, its obligation to deliver the various forms to the City's architect within ten days of award is misplaced. In actuality, Conwell's duty to deliver the forms was a condition precedent. The next question becomes, was it a condition precedent to the formation of a contract or a condition precedent to the City's obligation to perform? Considering the totality of the facts, we believe that it was the latter.

■ A valid, binding contract was formed on December 8. Conwell then had ten days to deliver the various documents in order to bind the City to perform. Did Conwell satisfy the condition precedent? We hold that it did. It delivered the entire set of documents required by the bid award on December 16. Then, owing to the *City's* error in stating, "Architectural Firms do not need to be included as 'Named Insured,'" and owing to the architect's request that his architectural firm *should* be named as an insured, Conwell had to correct the certificates of insurance and re-deliver them on December 19. The City, and not Conwell, caused the delay of three days, and may not now be permitted to deny Conwell the rights of the contract by its (the City's) own error.

Even had Conwell delivered the documents on December 19 *without* the City's error, however, we still would hold that Conwell timely delivered the documents owing to the fact that a *de minimis* defective compliance with a requirement such as this should not defeat the entire contract. *Cf.* 10 McQuillin § 29.80. Absent other contingencies or the express agreement of the parties as to delivery no later than a precise hour agreed upon, Conwell's delivery of the documents on December 19, following the weekend of December 17–18, invokes in our mind the legal maxim, *de minimis non curat lex.*

Further, had the City deemed precise time of delivery so crucial to these interests, why then did it invite Conwell to the December 22 preconstruction conference? If Conwell's December 19 delivery was untimely, the City did not seem perturbed enough by it on December 22 to discontinue its plans for performance of the contract.

■ We hold then, that a valid, binding contract was formed on December 8, and that the City repudiated this contract by withdrawing its notice of award. We do not construe Conwell's efforts to persuade the City to waive paragraph 8–G as a repudiation of the contract. It appears to us that Conwell was merely trying to trade paragraph 8–G against the City's request for a lengthening of the bid-irrevocability period. Conwell did not express to the City an intention not to abide by the contract. It merely was bargaining for deletion of one of the terms of the contract. *Cf. New Mexico–Colorado Coal & Mining Co. v. Baker,* 21 N.M. 531, 157 P. 167 (1916) (repudiation is a rescission without right whereby one party declares to the other party its intention not to abide by the contract).

Accordingly, summary judgment in favor of the City is reversed. We remand the case with instructions to enter summary judgment in favor of Conwell as to liability and to hold a trial on the merits as to the issue of damages. If a contract such as this "is awarded to the lowest bidder, and the municipality then illegally refuses to enter into a contract, the successful bidder is generally entitled to recover damages." 10 McQuillan § 29.86.

For the foregoing reasons this case is reversed and remanded to district court for action not inconsistent with this opinion.

IT IS SO ORDERED.

RANSOM, MONTGOMERY and WILSON, JJ., concur.

BACA, J., dissents.

BACA, Justice (dissenting).

I respectfully dissent from the majority's opinion. I am not convinced that the City's initial notice of award constituted acceptance of Conwell's bid and believe that the requirement that Conwell provide documentation of bonds and insurance constituted a condition precedent to formation of the contract.

The majority and I part ways on the characterization of the requirement that valid insurance coverage with accompanying documentation be procured as a condition precedent to performance, not formation. As the majority properly indicated, whether a condition is precedent to formation or performance is controlled by the parties' intent. *See Western Commerce Bank v. Gillespie,* 108 N.M. 535, 775 P.2d 737 (1989). The majority does not, however, point to any evidence indicating that the parties intended the requirements as condition precedent to performance, and I believe that the language of the agreement, the actions of the parties, and the nature of the conditions (specifically the importance of performance bonds and insurance coverage in a project of this type and their reflection on the contractor's capacity to fulfill the requirement of responsibility and to be a party to this contract) all indicate that they were precedent to formation.

In its letter giving notice of award, the City reminded Conwell of the remaining requirements specified in the bid proposal, including the performance bonds and certificates of insurance. The letter went on to specify that the bonds and certificates would have to be "accepted" by the City before the contract documents would be executed. I believe a plain reading of this indicates that the City reserved the right to accept the documentation, that this went to the contractor's ability to properly fulfill its part of the contract, and that until the City accepted the documentation, there was no contract.

A reading of the documents as a whole compels this interpretation. The bid solicitation indicates that the contract would be awarded to the "lowest responsible bid-der." The bond and certificate of insurance constituted partial proof of the contractor's responsibility and capacity to properly fulfill its contractual obligations. The solicitation also indicates that after bids were opened the City would make "a tentative determination of the qualifications of the apparent low bidder to perform the work," further evincing the intent that acceptance was conditional upon further proof of responsibility.

The actions of the parties at the time further evince their intent that furnishing of proper documentation was a condition precedent to formation of the contract. The City believed that, to allow Conwell further time to cure the defects in the documentation, the irrevocability period had to be extended. Conwell began to renegotiate on this basis, claiming that it would extend the period if the City waived certain of the solicitation's provisions. This indicates that both parties reasonably believed no contract had yet been formed— there would be no reason to extend the irrevocability period if the bid had already been accepted.

Finally, a common-sense analysis of the transaction demonstrates the folly of labeling it a condition precedent to performance rather than formation. The purpose of the requirement of documentation was not to enable Conwell to perform, but to determine its capacity to perform. *Cf. Gillespie,* 108 N.M. at 537, 775 P.2d at 739 (obtaining of financing conditioned performance).

In *Silva v. Noble,* 85 N.M. 677, 678, 515 P.2d 1281, 1282 (1973), we stated that "to constitute a binding contract, there must be an unconditional acceptance of the offer made." This "requires manifestation of unconditional agreement to all of the terms of the offer and an intention to be bound thereby * * *. [R]egardless of the form or means used, there must be made manifest a definite intention to accept the offer and every part thereof and be presently bound thereby without material reservations or conditions." *Id.* at 679, 515 P.2d at 1283 (citations omitted). The City has not manifest such a definite intent, and I cannot

acquiesce to the majority's characterization of the conditions as mere conditions to performance.

Although I agree that the City's error may have been partially responsible for Conwell's failure to meet the condition, I note that the City attempted to give Conwell the opportunity to cure the deficiencies. The December 22 preconstruction conference that the majority explains as indicating the City's acquiescence to Conwell's de minimis failure to conform to the condition appears more likely to represent the City's desire to allow Conwell to cure the defect. It was not the failure to meet the condition to provide timely proof of responsibility that ultimately caused this contract not to be consummated. In order for the City to allow Conwell to cure and meet the condition, the City required an extension of the bid irrevocability period. Conwell refused to extend the period, effectively precluding its offer from further consideration. Accordingly, I would affirm the district court's summary judgment in favor of the City.