IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: 2010-NMCA-042

Filing Date: April 8, 2010

Docket No. 29,566

JAMES POTTER,

     Worker-Appellant,

v.

PATTERSON UTI DRILLING CO. and
LIBERTY MUTUAL GROUP,

     Employer/Insurer-Appellees.

APPEAL FROM THE WORKERS' COMPENSATION ADMINISTRATION
Gregory D. Griego, Workers' Compensation Judge

Dorato & Weems, LLC
Veronica A. Dorato
Albuquerque, NM

for Appellant

Allen, Shepherd, Lewis, Syra & Chapman, P.A.
Kimberly A. Syra
Amy M. Cardwell
Albuquerque, NM

for Appellees

## OPINION

**VIGIL, Judge.**

**{1}** In this case, Worker was injured while working for Employer on a drilling rig in Pennsylvania, and seeks workers' compensation benefits in New Mexico. The dispositive question is whether the employment contract was "made" in New Mexico because after Worker accepted the offer of employment in New Mexico, he was required to take and pass a drug test in Pennsylvania before he could start working on the oil rig. We hold that this

1

requirement did not negate formation of the employment contract in New Mexico. Accordingly, we reverse the workers' compensation judge (WCJ) decision that there is no jurisdiction to award benefits under our extra-territorial coverage statute, NMSA 1978, § 52-1-64 (1989) (amended 2007).

## BACKGROUND

{2}     The material facts are undisputed.  Mike Feaster, a rig manager employed with Patterson UTI Drilling Company (Employer), called Worker at his home in Albuquerque to offer him a job with Employer on a drilling rig in Pennsylvania.  Feaster lives in, and called from, his house in Truth or Consequences, New Mexico.  Employer has an office in New Mexico, and Worker had previously worked with Feaster.  Worker accepted the offer of employment on the phone and asked, "So, this is a for sure deal?"  Feaster responded, "Yeah, you need to fill this paperwork out."  Feaster then traveled to Worker's home to complete some employment paperwork, including a job application and a safety questionnaire.  After the meeting in Worker's house and after Worker accepted Feaster's offer of employment, Feaster told Worker, "You're hired, let's go," and both men then drove together to Pennsylvania.  Worker made sure to confirm employment with Employer before leaving.  He testified, "I wasn't going out [to Pennsylvania] not knowing what was going to happen."

{3}     Worker understood that upon arrival in Pennsylvania, he would have to take a drug test and complete additional paperwork before working.  As for the drug test, Worker would take a "quick cup" drug test at the rig.  Worker knew that failing this test meant that he would be unable to work on the rig.  After Worker passed the drug screen and completed additional written tests, he began work.

{4}     Shortly thereafter, Worker was injured in an accident on the Pennsylvania rig while employed as a floorhand/roughneck.  As a result of his accident, Worker's left pinky finger was amputated and subsequent complications required a second surgery.  Worker received treatment for his injuries in both Pennsylvania and New Mexico.  The parties stipulated that the accident arose out of, occurred within the course and scope of, and was reasonably incident to his employment.

{5}     Worker filed a complaint in New Mexico to receive workers' compensation benefits under the Workers' Compensation Act (Act).  NMSA 1978, §§ 52-1-1 to -70 (1929, as amended through 2007).  Following a trial, a compensation order was entered in which the WCJ concluded that Worker was injured in an accident that arouse out of, and during the course of, employment with Employer, and Employer had legally sufficient notice of the accident.  However, the WCJ denied benefits to Worker, concluding that jurisdiction was lacking under Section 52-1-64.  Worker appeals.

## STANDARD OF REVIEW

**{6}** On appeal, the meaning and construction of a statute is subject to de novo review. *Baca v. Complete Drywall Co.*, 2002-NMCA-002, ¶ 12, 131 N.M. 413, 38 P.3d 181. In addition, in a workers' compensation case, "we apply a whole record review when assessing whether there is substantial evidence to support the WCJ's decision." *Gutierrez v. Intel Corp.*, 2009-NMCA-106, ¶ 11, 147 N.M. 267, 219 P.3d 524. "In applying whole record review, this Court reviews both favorable and unfavorable evidence to determine whether there is evidence that a reasonable mind could accept as adequate to support the conclusions reached by the fact finder." *Levario v. Ysidro Villareal Labor Agency*, 120 N.M. 734, 737, 906 P.2d 266, 269 (Ct. App. 1995).

## EXTRA-TERRITORIAL COVERAGE UNDER THE WORKERS' COMPENSATION ACT

**{7}** Section 52-1-64 of the Act provides that under certain circumstances a worker is entitled to workers' compensation benefits in New Mexico, even though the injury occurs outside of New Mexico. The statute directs:

> If an employee, while working outside the territorial limits of this state, suffers an injury on account of which the employee or, in the event of the employee's death, the employee's dependents would have been entitled to the benefits provided by the Workers' Compensation Act . . . , had such injury occurred within this state, the employee or, in the event of the employee's death resulting from the injury, the employee's dependents shall be entitled to the benefits provided by that act; provided that at the time of the injury:
>
> > A. the employee's employment is principally localized in this state;
> >
> > B. the employee is working under a contract of hire made in this state in employment not principally localized in any state;
> >
> > C. the employee is working under a contract of hire made in this state in employment principally localized in another state whose workers' compensation law is not applicable to the employee's employer;
> >
> > D. the employee is working under a contract of hire made in this state for employment outside the United States and Canada; or
> >
> > E. the employee is an unpaid health professional deployed outside this state by the department of health in response to a request for emergency health personnel made pursuant to the Emergency Management Assistance Compact.

3

**{8}** At issue in this case is Subsection B. To demonstrate that New Mexico has jurisdiction to provide compensation benefits under Subsection B, a worker must establish: (1) while working outside the state, the worker was injured; (2) such injury would have been compensable under the Act had it occurred within the state; (3) the contract for hire was made within the state; and (4) the employment is not principally located within any state. The only issue in this appeal is whether the contract for employment was made in New Mexico.

**{9}** Section 52-1-64 adopted the "place-of-contract or place-of-hiring" test from 4A Larson, *Larson's Workmen's Compensation Law* § 87.31 (1989), *reorganized at* 9 *Larson's Workers' Compensation Law* § 143.03[2][a] (2008). *Orcutt v. S & L Paint Contractors, Ltd.*, 109 N.M. 796, 798, 791 P.2d 71, 73 (Ct. App. 1990). "Under this theory, the place where the employment contract was made is determinative of coverage." *Id.* Thus, the "place-of-hiring" test requires an analysis of the technical requirements for contract formation, including the manifestation of mutual assent formed by a legal offer and a legal acceptance. *Id.* at 798-99. *See Black's Law Dictionary* 124 (8th ed. 2004) (defining mutual assent as an "[a]greement by both parties to a contract, [usually] in the form of offer and acceptance"). Under this analysis, "the geographical place where the acceptance is given will control the location of the formation of the contract." *Orcutt*, 109 N.M. at 798, 791 P.2d at 73; *see Todacheene v. G & S Masonry*, 116 N.M. 478, 481, 863 P.2d 1099, 1102 (Ct. App. 1993) (applying the *Orcutt* rule, the workers' compensation judge could properly conclude that the contract of employment was formed in Arizona after finding that the worker accepted the offer of employment in Arizona).

**{10}** In *Orcutt*, we applied the "place-of-hiring" test of Section 52-1-64. The employer in *Orcutt* called the worker's husband in New Mexico and offered employment in Nevada to both the worker's husband and the worker. *Orcutt*, 109 N.M. at 797, 791 P.2d at 72. Husband accepted the offer made to him but he did not tell the worker of the offer because he did not want her to work. *Id.* After the worker arrived in Nevada with her husband, the employer offered employment to her directly. *Id.* She accepted, began working, and was injured. *Id.*

**{11}** We applied traditional contract formation principles and held that the worker was not hired in New Mexico, and thus, jurisdiction under Section 52-1-64 was not satisfied. *Orcutt*, 109 N.M. at 797-99, 791 P.2d at 72-74. We reasoned:

> [T]he evidence is undisputed that worker did not find out about the offer until she arrived in Nevada. From her testimony, it appears that worker went to Nevada only to accompany her husband. Her plans were "to walk around" during the day. Since she was not going to be employed by employer, her husband had agreed to pay employer for half of the motel room. Employer did not pay worker any travel expenses. She was not regularly employed by employer in New Mexico. In fact, worker had never worked for employer before. There was no evidence supporting an inference that worker's travel

4

to Nevada was an act of "acceptance" to a known job offer made by employer in New Mexico. It seems clear that, whether the contract of hire is classified as unilateral or bilateral, it was formed, as a matter of law, in Nevada.

*Id.* at 799, 791 P.2d at 74.

**{12}** Worker's situation in the case before us is markedly different than in *Orcutt*. There is no dispute that Feaster, a rig manager with the authorization to hire Worker, called from his home in New Mexico to Worker at his home in New Mexico and offered Worker employment. Worker accepted the offer over the phone. Worker testified that he would not have traveled but for the job, and he traveled to Pennsylvania because the employment was confirmed. The parties thus objectively manifested mutual assent to a contract of employment prior to Worker's arrival in Pennsylvania.

**{13}** Employer recites a number of arguments to assert that mutual assent to the contract was not formed in New Mexico. For example, Employer maintains that while Feaster had authority to hire Worker, he had no such authority until the drug and safety tests were completed. However, there is no evidence in the record that Worker knew of such a limitation. *See Pope v. Gap, Inc.*, 1998-NMCA-103, ¶ 16, 125 N.M. 376, 961 P.2d 1283. ("[T]he meaning attached by one party is operative when that party has no reason to know of any different meaning attached by the other, and the other has reason to know the meaning attached by the first party." (internal quotation marks and citation omitted)). Based upon the objective manifestations expressed by the parties, Worker's belief that he was hired in New Mexico was reasonable. *See id.* ¶ 13 (stating that mutual assent is based on objective evidence and that what is operative is the objective manifestations of mutual assent by the parties, rather than a secret intent). Employer asks this Court to draw an inference that Worker's prior experience with Feaster made him aware of such a policy. We decline to do so in light of Worker's testimony that he would not have traveled to Pennsylvania if he did not believe he had a job with Employer. Additionally, Feaster himself did not reveal this policy to Worker and explicitly contradicted it when asked by Worker if he had a job. To the extent that Worker was aware of the drug and safety testing requirements, he only testified that the requirements were necessary prior to starting work on the rig, not that they were necessary before being hired.

**{14}** We also disagree with Employer that the text of the employment application negates mutual assent to enter into an employment contract. The job application states:

I understand and agree that the omission of [sic] misrepresentation of any fact in the EMPLOYMENT APPLICATION will be sufficient reason for EMPLOYER to deny me employment. I also understand and agree that should I become employed by EMPLOYER and it is later discovered I have omitted or misrepresented any fact in this EMPLOYMENT APPLICATION, . . . EMPLOYER may immediately terminate my employment upon

5

discovery of such omission or misrepresentation.

Initially, Employer disputes that Worker faxed an application to a Patterson office in New Mexico prior to arriving in Pennsylvania because the application in the record does not contain fax identification markings and is dated August 6, 2007, a date on which Worker was in Pennsylvania. At the formal hearing, Worker testified that he was sure he completed an application and faxed it prior to leaving Albuquerque. Whether the employment application was completed and faxed while in New Mexico (according to Worker) or completed upon arrival in Pennsylvania (according to Employer), the parties had already manifested their mutual assent to a contract of employment. We disagree with Employer that the phrase, "I also understand and agree that should I become employed" contained in the application indicated that Worker was not yet employed. It is undisputed that Feaster orally offered Worker employment, and Worker verbally accepted the offer on the telephone. At best, the written application came later, and it did not alter the objective manifestation of mutual assent at the time the oral agreement between Worker and Employer was made.

**REQUIRING WORKER TO SUBMIT TO DRUG AND SAFETY TESTING UPON ARRIVAL IN PENNSYLVANIA DID NOT AFFECT THE FORMATION OF THE UNDERLYING EMPLOYMENT CONTRACT**

**{15}** We have already concluded that Worker entered into an employment contract with Employer upon his acceptance of Employer's offer of employment in New Mexico. We must also determine whether Worker's subsequent drug and safety testing in Pennsylvania constituted "conditions subsequent" to the formation of the New Mexico contract. We asked the parties to brief this issue and referred to *Bowen v. Workers' Compensation Appeals Board*, 86 Cal. Rptr. 2d 95 (Ct. App. 1999), and *Shehane v. Station Casino*, 3 P.3d 551 (Kan. Ct. App. 2000).

**{16}** Employer notes the difficulty posed by using the terms condition subsequent and condition precedent. "Many commentators and courts have noted the difficulty in classifying a condition in a contract as precedent or subsequent." *Famiglietta v. Ivie-Miller Enters., Inc.*, 1998-NMCA-155, ¶ 13, 126 N.M. 69, 966 P.2d 777; *see Restatement (Second) of Contracts* § 224 cmt. e (2009) (abandoning the term "condition subsequent"). We have previously explained the formal difference between the terms in *K.L. Conwell Corp. v. City of Albuquerque*, 111 N.M. 125, 802 P.2d 634 (1990). A condition precedent is an event which occurs after the formation of a valid contract and must occur before there can be a breach of contractual duty, while a condition subsequent is an event agreed upon by the parties that operates to discharge a party's duty to perform after it has arisen. *Id.* at 129, 802 P.2d at 638. The core issue presented to us in this case is whether the testing requirement was a prerequisite to the formation of the underlying contract, or whether the condition was a prerequisite to a future obligation to perform under the contract. *Id.* This determination is controlled by the intent of the parties. *Id.*

**{17}** We regard *Bowen* and *Shehane* persuasive to our analysis, despite their use of the

6

term "condition subsequent." In *Bowen*, a professional baseball player who resided in California, was initially contacted by the Florida Marlins and offered a term of employment over the phone. 86 Cal. Rptr. 2d at 97. The Marlins mailed a contract for the player's signature to his home, which he signed and forwarded to the commissioner for his signature. *Id.* The contract stated that it would not become valid until the commissioner signed it, presumably in a different state. *Id.* The player was later injured while playing for the Marlins and sought recovery under California's workers' compensation statute. *Id.* The California Workers' Compensation Appeals Board held that it did not have jurisdiction over the claim because it concluded the contract of hire was not made within California. *Id.* at 99. On appeal, the court reversed and held that the contract was formed in California because the commissioner's approval of the contract did not affect whether a contract was formed by the parties. *Id.* at 103. It reasoned in part:

> [T]he fact that there are formalities which must be subsequently attended to with respect to such extra[-]territorial employment does not abrogate the contract of hire or California jurisdiction. Such things as filling out formal papers regarding the specific terms of the employment or obtaining a security clearance from the federal government are deemed '*conditions subsequent*' to the contract, not preventing it from initially coming into existence.

*Id.* at 100 (first alteration in original) (quoting *St. Clair*, *Cal. Workers' Compensation Law & Practice* § 2.10, 111-12 (5th ed. 1996)).

**{18}**    A similar result was reached in *Shehane*. There, a performer residing in Kansas responded to an advertisement to perform in Missouri and auditioned in Missouri. *Shehane*, 3 P.3d at 552. The employer then called the performer on the telephone to her home in Kansas and offered her employment, which she subsequently accepted by calling Missouri. *Id.* The employer did not tell the performer that her employment was contingent upon taking and passing a drug test. *Id.* The performer received a contract in the mail at her home that referenced a "'pre-employment drug screening' which was considered a 'condition of employment.'" *Id.* at 553. The performer signed the contract at her home in Kansas, then took and passed the drug screen in Missouri, and began work. *Id.* She was then subsequently injured while working in Missouri and sought workers' compensation benefits in Kansas. *Id.* On appeal, the Kansas Court of Appeals held that "[t]he drug screening was a condition subsequent to the contract and did not prevent it from initially coming into existence." *Id.* at 555. Relying on *Bowen*, the court stated, "The formation or creation of the contract in this case was complete when [the performer] accepted the offer of employment on the telephone and further when she signed the employment contract, both events occurring at her home in [Kansas]." *Id.*

**{19}**    Both *Bowen* and *Shehane* held that the subsequent conditions did not affect formation of the underlying contract. The conditions were only necessary in that they had to be completed before actual employment commenced. We consider this reasoning in cases such as the one before us, as a sound approach in applying the "place of hire" test.

7

**{20}**     Employer asks us to distinguish Worker's case from *Bowen* and *Shehane*. Employer first notes that the court in *Bowen* indicated that the employer in that case had conceded the existence of a contract and that Employer has made no such concession in the present case. However, we have already determined that an oral contract for employment was made in New Mexico. Further, we are unpersuaded that California's statutory directive to liberally construe its workers' compensation statute makes *Bowen* entirely inapplicable to our case. *Compare Bowen*, 86 Cal. Rptr. 2d at 99 (holding California courts are to liberally construe the statute in favor of workers), *with* NMSA 1978, § 52-5-1 (1990) (stating it is the Legislature's intent not to allow courts to liberally construe the statute in favor of workers). Instead, we agree that drug and safety testing requirements after a contract or employment is formed are conditions that, particularly in this case, do not control where the contract was made. Employer attempts to distinguish *Shehane* based upon the language in its application. As noted earlier, the language on Employer's application is not controlling because the parties had already entered into an oral employment contract before the written application was completed.

**{21}**     Employer then argues *Shehane* and *Bowen* have been distinguished by *Speer v. Sammons Trucking*, 128 P.3d 984 (Kan. Ct. App. 2006). In *Speer*, the driver initially drove a truck for an individual, which in turn led to work with the employer. The driver stopped working for the employer for a period of time and contacted the employer to begin working again. *Id.* at 987. The driver offered his services on specific terms over the phone while in Kansas and, in Montana, the employer accepted the driver's offer. The driver later took a drug test and signed additional papers in Montana. *Id.* The court held that the "last act necessary for the formation of the employment contract, [was the employer's] acceptance of [the driver's] offer of employment, [which] occurred in Montana." *Id.* at 991. In dicta, the court reasoned that even if the employer's acceptance was a counteroffer, the worker's subsequent drug testing was the last act necessary for the formation of the contract. We disagree with Employer that the dicta in *Speer* renders the persuasive value of *Bowen* and *Shehane* invalid. Indeed, the holding of *Speer*—acceptance of an offer of employment is the last necessary act and therefore controls the location of the contract—confirms our conclusion that Worker's acceptance of Employer's offer in New Mexico grants New Mexico jurisdiction over Worker's claim.

**{22}**     We hold that the drug and safety testing required of Worker, after he entered into an employment contract in New Mexico, but before he could begin working on the Pennsylvania rig, was a condition that did not affect the formation of the underlying contract. Worker's understanding at the time of Employer's offer, coupled with Employer's objective manifestations of assent, confirms that the employment contract was made in New Mexico.

**{23}**     Employer has conceded that Worker suffered a compensable injury, and Employer knew Worker was a New Mexico resident at the time he was hired. Allowing Employer to deny paying benefits in New Mexico on jurisdictional grounds, while also allowing Employer to litigate the claim in Pennsylvania, does not serve the purpose of assuring quick

8

and efficient delivery of medical benefits to injured workers. The Legislature has instructed us to interpret the Act "to assure the quick and efficient delivery of indemnity and medical benefits to injured and disabled workers at a reasonable cost to the employers . . . . [The Act is] not to be given a broad liberal construction in favor of the claimant or employee on the one hand, nor are the rights and interests of the employer to be favored over those of the employee on the other hand." Section 52-5-1; *see Gomez v. B.E. Harvey Gin Corp.*, 110 N.M. 100, 102, 792 P.2d 1143, 1145 (1990) ("Section 52-5-1 calls for a balanced and evenhanded construction of the Workers' Compensation Act."). Our holding today ensures that a New Mexico resident, hired while in New Mexico by an Employer with New Mexico offices, is not faced with the choice of drawing upon public benefits or traveling to a foreign state to attempt recovery from an employer who has already admitted the compensability of the injury.

**CONCLUSION**

**{24}** Accordingly, we reverse the decision of the WCJ and remand for proceedings consistent with this opinion.

**{25}** **IT IS SO ORDERED.**

_____
**MICHAEL E. VIGIL, Judge**

**WE CONCUR:**

_____
**RODERICK T. KENNEDY, Judge**

_____
**LINDA M. VANZI, Judge**

**Topic Index for *Potter v. Patterson UTI Drilling Co.*, Docket No. 29,566**


| **AE** | **APPEAL AND ERROR** |
| AE-SR | Standard of Review |

| **CN** | **CONTRACTS** |
| CN-CP | Condition Precedent or Subsequent |
| CN-FC | Formation of Contract |

| **EL** | **EMPLOYMENT LAW** |
| EL-EC | Employment Contract |

**ST**               **STATUTES**
ST-IP             Interpretation

**WC**              **WORKERS' COMPENSATION**
WC-OI            Out-of-State Injury